UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANNA M. SCHAFER, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Cause No. 3:20-CV-1000 RLM-MGG |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| *Defendant* | ) |

<u>ORDER AND OPINION</u>

Anna Schafer seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 1381 *et seq.* The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The court took the appeal under advisement following a telephonic hearing on July 6, 2022, and for the following reasons REVERSES the Commissioner's decision and REMANDS for further proceedings.

I.   BACKGROUND

Anna Schafer applied for Social Security Disability Insurance benefits on March 26, 2018, alleging that her disability began on December 31, 2016. Ms. Schafer's application was denied initially and on reconsideration. She attended an administrative hearing by video on December 16, 2019, where she and a vocational expert testified.

The ALJ issued an unfavorable decision to Ms. Schafer on January 29, 2020. The ALJ concluded that:

1. Ms. Schafer met the insured status requirements of the Social Security Act through December 31, 2021.

2. Ms. Schafer hadn't engaged in substantial gainful activity since December 31, 2016, the alleged onset date. 20 C.F.R. § 404.1571 *et seq.*

3. Ms. Schafer had the following severe impairments: degenerative disc disease of the lumbar spine; mild sacroiliac joint degenerative joint disease; left hip labral repair and femoral neck resection; and obesity. 20 C.F.R. § 404.1520(c).

4. Ms. Schafer didn't have impairments that were severe enough, either singularly or in combination, to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

5. Ms. Schafer has the residual functional capacity to perform light work; lift, carry, push, and/or pull up to 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk up to six hours in an eight-hour workday, sit up to six hours in an eight-hour workday with normal breaks; she can never climb ladders, ropes or scaffolds, occasional ramps and stairs, occasionally balance, stoop, kneel, crouch, and crawl; can't have exposure to wetness, unprotected heights, moving mechanical parts, or uneven surfaces.

6. Ms. Schafer could perform past relevant work as a teller. This work does not require the performance of work-related activities precluded by Ms. Schafer's residual functional capacity. 20 C.F.R. § 404.1565.

7. Ms. Schafer was not under a disability as defined by the Social Security Act from December 31, 2016, through the date of the decision.

The ALJ concluded that Ms. Schafer wasn't entitled to disability benefits because she wasn't disabled within the meaning of the Social Security Act. When the Appeals Council denied her request for review, the ALJ's decision became the

final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

## II.   STANDARD OF REVIEW

"The Social Security Act, 42 U.S.C. § 405(g), requires the Commissioner's findings to be sustained if supported by substantial evidence." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner. Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000). Instead, the court must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) (internal quotations omitted). While the ALJ isn't required "to address every piece of evidence or testimony presented, she must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160.

III. DISCUSSION

Ms. Schafer argues that the ALJ's decision is unsupported because the ALJ relied on outdated medical opinions and because the ALJ erred by excluding an assistive device, such as a cane, from the residual functional capacity.

Ms. Schafer's first argument about outdated medical opinions focuses on the ALJ's determination that Ms. Schafer could do light work, including standing and walking up to six hours per workday and managing light or medium weights. State agency medical and psychological opinions from July 2018, January 2019, and February 2019 suggested those limitations would be appropriate. The ALJ found those the opinions persuasive based on their detailed reasoning and consistency, so relied on the opinions to form the residual functional capacity.

Although those opinions might have supported the residual functional capacity in early 2019, Ms. Schafer argues that because the opinions were all from before her failed hip surgery in 2019, they're outdated and create an unsupported residual functional capacity. Ms. Schafer had already had pain and mobility issues with her left hip at the time of the state agency opinions. She had a hip arthroscopy with labral repair in September 2018 to deal with the pain. The September procedure was successful, but Ms. Schafer reinjured her left hip in February 2019. By June, her pain was bad enough that she required a debridement procedure, which eased her pain for six weeks or so. By November, her pain was back. She told her surgeon, Dr. Sieradzki, that any hip motion caused pain and Dr. Sieradzki advised her of various opinions, including a hip

4

replacement surgery. Dr. Sieradzki referred Ms. Schafer to Dr. Cien for a second opinion.

Dr. Cien saw Ms. Schafer in December 2019. He noted that Ms. Schafer had moderate to severe pain that was constant and that sitting, standing, walking, and bearing weight aggravated the pain. He ordered a hip tendon injection to help with Ms. Schafer's pain, discussed the possibility of a hip replacement surgery, suggested that Ms. Schafer use an assistive device to help move around, and made a few other recommendations for pain management.

Ms. Schafer argues that her more recent medical history shows that the residual functional capacity is unsupported. According to Ms. Schafer, Dr. Sieradzki and Dr. Cien's medical notes are new and potentially decisive medical evidence that make the earlier agency opinions outdated. If the older opinions are outdated, then the ALJ shouldn't have relied on them to form the residual functional capacity. She points out that the state agency consultants didn't have the benefit of knowing that her hip pain and mobility would worsen or that the procedure in June 2019, though initially successful, would eventually prove unsuccessful. Nor did the earlier consultants have the benefit of the x-ray imaging that Dr. Sieradzki referred to in his notes. She compares her case to Goins v. Colvin, 764 F.3d 677 (7th Cir. 2014). In Goins v. Colvin, the ALJ's reliance on earlier opinions amounted to "uncritical acceptance of the consulting physicians' conclusions," because they hadn't been shown "new and potentially decisive medical evidence." Id. at 680. Ms. Schafer argues that the ALJ should have given the earlier opinions much less weight or resubmitted the evidence for

5

medical experts to evaluate. She also takes issue with the ALJ's implication that the records wouldn't have made a difference to the agency consultants—she says that's a medical judgment for someone other than an ALJ.

The Commissioner responds by arguing that the ALJ's decision reflects a reasonable assessment of the evidence. The Commissioner argues the ALJ articulated why the consultants' opinions were persuasive, in line with agency regulations, and that many of the opinions supporting light work were consistent with each other. The Commissioner argues that the new evidence is simply not as forceful as Ms. Schafer claims it is; the Commissioner says Dr. Sieradzki and Dr. Cien's records are less detailed and provide less of a longitudinal view of Ms. Schafer's limitations than the earlier consultative examiners' records. The Commissioner characterizes the doctors' comments about a hip replacement surgery as telling Ms. Schafer about what might someday be required and not as recommendations for an immediate course of treatment. Finally, the Commissioner argues that the agency regulations define Dr. Cien's records as "other medical evidence" rather than "medical opinion," so the ALJ didn't need to address them at all. *Compare* 20 C.F.R. § 404.1513(a)(3) ("other medical evidence") *with* id. § 404.1513(a)(2) ("medical opinion").

The Commissioner's arguments don't explain how it was logical for the ALJ to ignore or discount the newest evidence. Although the Commissioner argues that the new evidence wasn't strong enough to fall in the zone of Goins v. Colvin, the newer evidence Ms. Schafer presented suggests a worsening hip, not just one that temporarily got worse. It would be one thing if the ALJ discounted evidence

6

of a worsened hip that was followed by evidence of a normalizing hip, but the new evidence shows a significant intervening event and suggests a downward trajectory, or at least a plateau set below the residual functional capacity found by the ALJ. Remand is appropriate so the ALJ can reconsider Ms. Schafer's new evidence in accordance with this opinion.

Ms. Schafer then argues the ALJ was wrong to exclude an assistive device, such as a cane, from the residual functional capacity, so the ultimate decision is unsupported. She first focuses on the ALJ's assessment of Dr. Cien's evidence relating to a cane. When Ms. Schafer saw Dr. Cien for a second opinion, Dr. Cien noted that Ms. Schafer might benefit from using a cane or other assistive device. His note specified five "alternatives to manage the arthritic hip," including "us[ing] assist[ive] devices, such as shopping basket, cane, crutches, or walker." [R. 1450]. This evidence didn't persuade the ALJ that Ms. Schafer needed a cane or other assistive device because, according to the ALJ's opinion: (1) earlier evidence showed that Ms. Schafer's hip often wasn't painful and that she had a normal gait; (2) Dr. Cien offered a mere recommendation and didn't describe the circumstances when an assistive device was needed, as required by S.S.R. 96-9p; (3) Dr. Cien only met with Ms. Schafer one time; and (4) Ms. Schafer had admitted at various earlier points that she didn't need a cane.

Mr. Schafer argues the ALJ's decision is unsupported even if it articulates some reasons for not including an assistive device. She argues that when the ALJ characterizes the evidence as mere recommendation, the ALJ ignores that a normal patient would understand a physician's "recommendation" as more than

7

a loose suggestion. She also argues that the context of the visit sheds light on the circumstances when she needed an assistive device: the recommendation was during a visit where Ms. Schafer complained about pain while moving around, so the recommendation must have been for when Ms. Schafer walked. This, she argues, satisfies the requirements of S.S.R. 96-9p, so the ALJ should've included a cane in the residual functional capacity.

Finally, Ms. Schafer argues that the evidence the ALJ relied on to show that Ms. Schafer's gait often normalized in the past became outdated when her 2019 surgery failed and her hip pain worsened, echoing her first main argument. She contends that it's illogical to discount evidence of the need for an assistive device after an injury, failed surgery, and worsened pain based on normal findings that all predate those things.

The Commissioner responds by reiterating some of the ALJ's reasons for rejecting an assistive device from the residual functional capacity. As with the first issue, the Commissioner argues Dr. Cien's recommendation wasn't a medical opinion under agency regulations, so the ALJ wasn't even required to address the opinion. Nevertheless, the Commissioner says, the ALJ articulated good reasons for finding the recommendation unpersuasive, namely that the recommendation wasn't specific, Dr. Cien only observed Ms. Schafer once, and other medical records showed a normal gait. The Commissioner concedes that an assistive device might be something for an ALJ to consider even if agency regulations don't expressly require consideration, *see* Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010), but stresses that the ALJ had ample evidence of a

8

normal gait without an assistive device, and that the court should defer to the ALJ's determination. The Commissioner repeats that Dr. Cien gave a mere recommendation, not medical opinion or order.

Remand is appropriate on this issue for largely the same reasons as Ms. Schafer's new medical evidence generally. The evidence Ms. Schafer presented suggested changed circumstances that the ALJ needed to address with more than earlier normal findings from before the injury and surgery, regardless of whether agency regulations didn't impose a duty to adopt any specific limitations. There was a logical gap in the ALJ's decision to discount the new evidence based on normal findings that in light of the new evidence were outdated.

IV.   CONCLUSION

Based on the foregoing analysis, the court concludes that the ALJ's assessment of Ms. Schafer's new evidence and assessment of the need for an assistive device weren't supported by substantial evidence. The Commissioner's decision is therefore REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: July 7, 2022

/s/ Robert L. Miller, Jr.
Judge, United States District Court